C.C.P.A.(Customs)

### GEO. W. COLE & CO. et al. v. UNITED STATES.

### Customs Appeal No. 4264.

Court of Customs and Patent Appeals.

Dec. 4, 1939.

Allan R. Brown, of New York City, for appellants.

Webster J. Oliver, Asst. Atty. Gen. (Charles J. Miville, of New York City, of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

Appellants imported from Jamaica coconuts, which were assessed, by the Collector of Customs at the port of New York, with duty at the rate of ½ cent each under the provisions of paragraph 758 of the Tariff Act of 1930, 19 U.S.C.A. § 1001, par. 758, reading in part as follows: "Par. 758. Coconuts, one-half of 1 cent each; * * *."

Protest was filed against this action of the collector, it being claimed that the merchandise was entitled to free entry by reason of the "generalization clause" of section 350(a) of the Tariff Act of 1930, as amended by the Reciprocal Trade Agreements Act of June 12, 1934, 48 Stat. 943, 19 U.S.C.A. § 1351(a) and the provisions of Article I of the trade agreement with Cuba of August 24, 1934, 49 Stat. 3559.

The United States Customs Court, Third Division, overruled the protest and from its judgment so doing appellants have appealed to this court.

The pertinent portions of the Reciprocal Trade Agreements Act, supra, follow:

Sec. 350. "(a) * * * the President * * * is authorized * * *

"(1) To enter into foreign trade agreements with foreign governments or instrumentalities thereof; and

"(2) To proclaim such modifications of existing duties * * * or such *continuance* * * * *of existing customs* or excise *treatment of any article covered by foreign trade agreements,* as are required or appropriate to carry out any foreign trade agreement that the President has entered into hereunder. No proclamation shall be made increasing or decreasing by more than 50 per centum any existing rate of duty or transferring any article between the dutiable and free lists. The proclaimed duties and other import restrictions shall apply to articles the growth, produce, or manufacture of all foreign countries, whether imported directly, or indirectly: *Provided,* That the President may suspend the application to articles the growth, produce, or manufacture of any country because of its discriminatory treatment of American commerce or because of other acts or policies which in his opinion tend to defeat the purposes set forth in this section; and the proclaimed duties and

other import restrictions shall be in effect from and after such time as is specified in the proclamation. The President may at any time terminate any such proclamation in whole or in part. [Italics except *"Provided"* ours.]

"(b) Nothing in this section shall be construed to prevent the application, with respect to rates of duty established under this section pursuant to agreements with countries other than Cuba, of the provisions of the treaty of commercial reciprocity concluded between the United States and the Republic of Cuba on December 11, 1902, *or to preclude giving effect to an exclusive agreement with Cuba concluded under this section, modifying the existing preferential customs* treatment of any article the growth, produce, or *manufacture of Cuba: Provided,* That the duties payable on such an article shall in no case be increased or decreased by more than 50 per centum of the duties now payable thereon. [Italics except *"Provided"* ours.]"

The preamble to the Cuban Trade Agreement of 1934, Article I thereof, and the last paragraph of Article III thereof read as follows:

## "[Preamble]

"The President of the United States of America and the President of the Republic of Cuba, desirous of strengthening the traditional bonds of friendship and commerce between their respective countries by maintaining as the basis for their commercial relations the granting of reciprocal preferential treatment, *in continuation of the policy adopted in the convention of Commercial Reciprocity of 1902* between the two countries, and taking into consideration that changed conditions have rendered it necessary to modify the provisions of that Convention, have arrived at the following Agreement: [Italics ours.]

## "Article I

"During the term of this Agreement, all articles the growth, produce or manufacture of the United States of America which would have been admitted free of duty if imported into the Republic of Cuba on the day of signature of this Agreement, and all articles the growth, produce or manufacture of the Republic of Cuba which would have been admitted free of duty if imported into the United States of America on the day of signature of this Agreement, shall be so admitted by the respective country free of duty.

\* \* \* \* \* \*

## "Article III

" \* \* \* Every article the growth, produce or manufacture of the Republic of Cuba which is not provided for in Article I, and which is not enumerated and described in Schedule II annexed to this Agreement, shall, on importation into the United States of America, be granted an exclusive and preferential reduction in duty of not less than 20 per centum, such percentage of reduction being applied to the lowest rate of duty now or hereafter payable on the like article the growth, produce or manufacture of any other foreign country."

At the trial before the Customs Court, no testimony was adduced by either side but the case was submitted on a stipulation, the pertinent parts of which read as follows:

"It is hereby stipulated and agreed by and between counsel for the plaintiff and the Assistant Attorney General for the United States that the merchandise assessed at one-half of 1 cent each under Par. 758, Tariff Act of 1930, on. the invoices covered by the above protest, consists of cocoanuts imported from Jamaica; that cocoanuts which were stated in the consular invoices to be the product of the soil of Cuba have been imported from Cuba into the United States at the port of Tampa, Florida, during the life of the Tariff Act of 1922 and were passed without the payment of duty and in accordance with the Department's instructions in T. D. 49362.

"It is further stipulated and agreed that cocoanuts were also imported from Cuba into the United States at the port of Miami, Florida, during the months from January to September, 1934, and were liquidated free of duty in accordance with T. D. 39362."

\* \* \* \* \* \*

This case was argued together with customs appeals Nos. 4222, 4223, and 4232, Louis Wolf & Co., etc. v. United States, 107 F.2d 819, 27 C.C.P.A., Customs, ——, decided concurrently herewith. Much of the reasoning of that decision is applicable in this case, but there are certain features of the instant case which call for a separate discussion. In pointing out the difference between the issues in those cases and the issue in the instant case, appellants here state that the last part of section 350(b), supra: "contemplates that articles from foreign countries shall not·

have the benefit of the trade agreement with Cuba if (1) an exclusive agreement is made with Cuba *and* (2) if said agreement *modifies* existing preferential treatment of any article the growth, produce, or manufacture of Cuba. The last paragraph of Article III of the trade agreement with Cuba makes the reduction to Cuba on its face exclusive and preferential, but this provision does not apply to Article I which is obviously not preferential. Therefore, the generalization clause in Section 350(a) (2) must apply to the instant merchandise."

So, the main point at issue in the instant case may be said to be: Are the benefits (freedom from duty) given to Cuba by Article I of the trade agreement exclusive and preferential? If they are, the judgment of the Customs Court must be affirmed, for we have already decided in Louis Wolf & Co., etc., v. United States, supra, that said Cuban Trade Agreement of 1934 modifies existing preferential treatment and that the generalization clause does not operate to extend to other foreign countries the privileges granted to Cuba.

The Government contends first, that the issue presented in this case has been decided adversely to the appellants by this court in F. H. Vonn Damm v. United States, 90 F.2d 263, 25 C.C.P.A., Customs, 97, T.D. 49094 and E. & J. Burke, Ltd. v. United States, 26 C.C.P.A., Customs, 374, C.A.D. 44; second, that since the so-called generalization clause which reads as follows: " * * * The *proclaimed* duties and other import restrictions shall apply to articles the growth, produce, or manufacture of all foreign countries, whether imported directly or indirectly: * * * [Italics ours.]" provides that a duty on the merchandise must be *proclaimed,* and there was no duty proclaimed on coconuts in connection with the Cuban Trade Agreement of 1934, the generalization clause would not apply; third, that since, at the time of the effective date of the Cuban Trade Agreement of 1934, coconuts coming from other countries were dutiable, if the contention of appellants that the generalization clause was effective and granted a free of duty status to such coconuts, this would be in violation of the provisions of the Reciprocal Trade Agreements Act to the effect that no duty should be reduced more than 50 per centum and that no article on the dutiable list should be transferred to the free list;

and fourth, that appellants have not established that Cuban coconuts are entitled to free entry under the Cuban trade agreement.

Appellants' contention that the Jamaican coconuts in controversy are entitled to be imported free of duty by virtue of the operation of the generalization clause with reference to articles covered by Article I of the Cuban Trade Agreement of 1934 would seem to be answered completely by the statement by the Government's counsel that if such result ensued it would be contrary to the express provision in subsection (2) of section 350(a), supra, reading as follows: " * * * No proclamation shall be made increasing or decreasing by more than 50 per centum any existing rate of duty or *transferring any article between the dutiable and free lists.* * * * [Italics ours.]"

It seems to us that if coconuts from every country other than Cuba are by operation of said generalization clause made free of duty, the result is that of transferring articles on the dutiable list, to wit, coconuts at one-half of 1 cent each, to the free list.

In view of the very earnest contentions of the importers as to the construction which they urge must be given to the act as a whole and the entire agreement in controversy, we think it proper, however, not to rest our decision of the case solely upon the consideration last above referred to. That it was not the intention of Congress in enacting the Reciprocal Trade Agreements Act to require generalization to all countries of any preferential treatment accorded Cuba in any convention entered into thereunder we have definitely held in the Vonn Damm, Burke and Wolf & Co. cases, supra. While the language there used was general in character and was used in cases which did not involve Article I of the trade agreement, we think, for reasons stated in the decision of those cases, it has a bearing upon the instant issue.

Moreover, the language used in the preamble to the trade agreement hereinbefore quoted is entirely inconsistent with the conclusion that it was the intention of the framers of the trade agreement to disturb the preferential relationship which had long existed between the United States and Cuba as to articles covered by said Article I of the agreement. The preamble pointed out definitely that the parties to the

agreement were desirous, for stated reasons, to continue "the policy adopted in the convention of Commercial Reciprocity of 1902 between the two countries." It certainly would not be a continuation of such policy if appellants' earnestly asserted contentions were agreed to. It is to be recalled that Article I of the Cuban Trade Agreement of 1934, relating to free goods, is substantially identical with Article I of the Cuban convention of 1902.

Furthermore, it seems important here to consider the so-called press release subject matter to which reference was made in the Wolf case, supra, and in that case urged by the Government as a proper consideration for the court. The "Press Release" was issued by the officials who had charge of the negotiations and preparation of the agreement with Cuba now under consideration and was released for publication at the time the text of the agreement with Cuba was published—August 24, 1934. (Department of State Press Releases, Publication No. 629, pages 118 and 119). In said press release is the following: "Although this agreement has been concluded under the Trade Agreements Act of June 12, 1934, *it stands, nevertheless in a separate category*. Geographical propinquity and historical considerations have given rise to especially close economic relationships between the United States and Cuba. Reciprocity with Cuba still 'is a proposition that *stands entirely alone*.' The commercial convention of 1902 took cognizance of these special considerations in establishing preferential rates of duty for the products of each country when entering the other country.

"The present agreement continues this special customs treatment. Each country, in addition to pledging reduced rates of duty for certain products of special interest to the other, *grants exclusive and preferential reductions in duty*. Regardless of what rates Cuba may establish hereafter on products of third countries, American products entering Cuba will be accorded reductions from such rates, varying from 20 to 60 per cent. In the same way, the United States will continue to grant certain percentages of preference to Cuban products. With no other country does the United States have this type of arrangement. *The mutual concessions accorded under this agreement, of course, are not generalized to third countries on the basis of most-favored-nation treaties.* [Italics ours.]"

In the decision of this case the Third Division of the United States Customs Court in an opinion by Judge Evans overruled the protest of appellants under the authority of that court's decision in I. L. Toledano Corporation v. United States, C.D. 129, 2 Cust.Ct. ——. In the decision of the Toledano case the same division of the Customs Court, in an opinion rendered by Judge Evans, based its conclusion on the decision of this court in F. H. Vonn Damm v. United States, supra, from which he quoted the following language: " * * * We are of the opinion that, in the absence of a new and exclusive agreement with Cuba, Congress intended that Cuba should continue to enjoy a 20 per centum reduction from the duties imposed by the Tariff Act of 1930, or provided for in any reciprocal tariff agreement made with countries other than Cuba, *but that Congress did not intend that any reciprocal tariff agreement should be made with Cuba, the provisions of which should automatically extend to other nondiscriminating countries * * *.* [Italics supplied.]"

While it may be contended that the italicized language in the above quotation may be in the nature of obiter dictum, since Article I of the trade agreement was not there under consideration, nevertheless we think the broad language there used does have an application to the instant issue because it seems clear from the preamble of the trade agreement that its framers never intended in said Article I to depart from the long-continued policy adopted by the convention of 1902 and that Congress "did not intend that any reciprocal tariff agreement should be made with Cuba, the provisions of which should automatically extend to other nondiscriminating countries." It would seem to follow, therefore, that as to merchandise covered by Article I of the trade agreement the generalization clause of the Reciprocal Trade Agreements Act was never intended to bring about the result contended for by the appellants.

For reasons stated, we are in agreement with the conclusion reached by the trial court that the Jamaican coconuts involved were properly assessed with duty under paragraph 758 of the Tariff Act of 1930 and that the protest of the importers was properly overruled. The judgment of the United States Customs Court is affirmed.

Affirmed.